OKLAHOMA OPERATING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 12660.   Promulgated October 31, 1929.

*B. A. Ames, Esq.,* for the petitioner.
*L. A. Luce, Esq.,* for the respondent.

## OPINION.

LANSDON : The single issue for our determination here is the actual cash value of the tangible property which the petitioner acquired in payment of its capital stock.

The term "invested capital" as used in the various revenue acts, is defined by the acts themselves as the "actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, at the time of such payment." The property in this case was the assets of the four companies merged, and the time of payment was the date of the merger, or the organization of petitioner, when it came into possession of the assets.

Three valuations have been put in evidence. The first is shown as that part, not assigned to good will, of the sale price fixed by the owners of the four companies merged before the organization and for which credit was given to the incorporators in payment of stock. This value was fixed and set up on petitioner's books at $121,114.33. The second valuation was the result of an appraisal which the petitioner caused to be made of all its physical assets one year after its incorporation, by an audit company, which determined the cash sale value of petitioner's assets on June 1, 1913. The third valuation was the result of a retrospective appraisal made on May 5, 1925, whereby the petitioner sought to determine the actual value of its tangible assets as of June 1, 1912, the date it took the same over in payment of its capital stock. This value was fixed at $138,693.35.

In respect to the first mentioned valuation, it is not contended by either of the parties that it was anything more than a rough estimate of the cash value of the property taken over. It did, however, in the aggregate, represent the price which all of the parties agreed should

be assigned to the tangible assets when taken into the company and paid for in stock, and is the only evidence we have as to what the organizers of petitioner, who were both sellers and purchasers, believed them to be worth for said purpose at that time. The respondent adopted the valuations established by the appraisal made June 1, 1913, as the basis of his determination of petitioner's invested capital on the basic date, while the petitioner contends that the retrospective appraisal made in 1925 correctly fixed the value of its assets for said purposes on said date. It is very clear that the determinations of this last mentioned appraisal can not be accepted as correctly establishing the value of petitioner's invested capital on the date of its organization. The evidence shows that the method employed in this appraisal sought only to establish the depreciated cost of these assets to June 1, 1912, rather than the cash value on said date. We have previously held that the original cost of properties acquired separately and at different times, can not be considered in determining their combined value, for invested capital, when they are subsequently taken over by a new corporation. *Maury Milling Co.*, 10 B. T. A. 1189. We have also found that properties, after consolidation under conditions that add to their economic development, may have a greater sale value than when separately owned; and, therefore, have greater value for invested capital purposes when paid in to a corporation. *Chartiers Creek Coal Co.*, 10 B. T. A. 984. We think the facts in this case may well bring it within this last mentioned rule, and that the assets of these several corporations, when assembled for employment under a single management, as shown here, had a sale value that should not be limited to the sums total or aggregate selling prices that might be obtained from the separate sales of the various plants, or parts of plants included in the whole. The basis adopted by the Commissioner was established by the cash sale price of the different plants as of June 1, 1913, method, while the values contended for by the petitioner were obtained by the method of original cost price per unit, plus freight and installation charges, depreciated to June 1, 1912. We do not think that the valuations contended for in either of these cases correctly reflect the petitioner's invested capital on June 1, 1912, when measured by the actual cash value of these assets to this corporation at the time it took them over. The testimony as to the facts attending the organization of the petitioner show that prior to the incorporation the owners of the four companies agreed that they would sell their respective businesses to the new corporation for the sum total of $150,000. Under the circumstances it can hardly be contended that good will, as an asset, figured in the purchase price. However, the parties agreed, for accounting purposes, to ascertain the actual value of the physical

assets to be conveyed to the corporation. They appointed a committee for this purpose, and this committee decided that these physical assets were worth the sum of $121,114.33. This value was assigned to these assets on the date that the corporation took them up on its books and issued its capital stock in payment therefor. The committee which determined these values was made up of the officers of the several corporations selling, and while their work of appraisal was not attended by the detailed survey usually made by experts, yet for practical purposes, it is evident that these officers knew these values without exhaustive examinations. Concerning this appraisal, one of these officers testified at the hearing that "we put down the figures for what we thought *was* the physical values, and then added them when we were through."

We think, in view of the appraisal made one year later, which found that these assets then had an aggregate sale price, if sold separately, of $104,447.59, and the retrospective appraisal made in 1925, which determined their depreciated cost at date of petitioner's organization to be $138,693.35, that this first appraisal, made by the committee prior to the merger, under the circumstances fairly established the actual cash value of these assets when assembled and delivered over to the petitioner for invested capital purposes, and therefore adopt the same as the correct basis of our determination. This appraisal fixed the value of these tangible assets at $121,114.33, which we find to be the correct measure of the petitioner's invested capital on the basic date.

*Decision will be entered under Rule 50.*